**In re the Marriage of Elizabeth Ann MIKODA, petitioner, Respondent,**

v.

**Thomas Henry MIKODA, Appellant.**

No. C9–87–537.

Court of Appeals of Minnesota.

Oct. 6, 1987.

Review Denied Dec. 22, 1987.

Roselyn J. Nordaune, St. Louis Park, for Elizabeth Ann MIKODA, petitioner, respondent.

Steven M. Graffunder, Henderson, Hass & Nyquist, P.A., Brooklyn Center, for Thomas Henry Mikoda, appellant.

Heard, considered and decided by LANSING, P.J., and CRIPPEN and MULALLY,[1] JJ.

## OPINION

MULALLY, Judge.

Nine years after the parties' marriage was dissolved, respondent Elizabeth Anne Mikoda moved the trial court[2] for an order finding appellant Thomas Henry Mikoda to be in constructive civil contempt of court, interpreting and clarifying the dissolution judgment, amending the dissolution judgment, awarding respondent interest on unpaid sums, and awarding respondent attor-

ney fees. The court granted the motion to interpret a portion of the judgment, found respondent was entitled to unpaid sums and interest, and granted respondent leave to develop a qualified domestic relations order. The trial court denied respondent's motion to amend the judgment, respondent's motion to hold appellant in contempt, both parties' motions for attorney fees, and appellant's motion to dismiss respondent's motion. Thomas Mikoda appealed, and respondent sought review. We affirm in part and reverse in part.

## FACTS

Elizabeth and Thomas Mikoda were married in 1949. Their marriage was dissolved on April 15, 1977. At the time of the dissolution, appellant was employed with Northwestern Bell Telephone Co. (Bell), and respondent was a real estate agent. The dissolution court made the following finding:

That [Thomas Mikoda] has an interest in a profit sharing plan and a pension plan with his employer, Northwestern Bell Telephone Company.

In paragraph 11 of the judgment and decree, the dissolution court awarded respondent 20% of appellant's pension and profit sharing plans with Bell.

On January 1, 1984, when he was 57 years old, appellant accepted Bell's offer of early retirement in exchange for a lump-sum inducement exceeding $30,000. Appellant did not inform respondent he had retired. After discovering appellant had retired, respondent brought a motion in January of 1986, asking the court to find Thomas Mikoda to be in constructive civil contempt of court; to amendment paragraph 11 of the judgment and decree; to award respondent interest on money Thomas Mikoda should have paid upon retirement; and to award respondent attorney fees.

After a hearing, the matter was continued. No written order or judgment was

1. Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

2. The term "trial court" refers to the court acting on the motion to interpret the original judgment.

ever entered on this motion, apparently because settlement discussions were taking place. Respondent substituted attorneys, and brought another motion to find appellant in contempt; to interpret and clarify paragraph 11 pursuant to Minn.R.Civ.P. 60.02(6); to amend paragraph 11; to award respondent interest on amounts appellant failed to pay after his retirement; and for attorney fees.

Appellant moved for an order dismissing petitioner's motion and for attorney fees. After a hearing, the trial court asked counsel to submit additional briefs and affidavits from qualified sources regarding appellant's benefits. After the order for judgment was signed, both parties moved for amended findings.

In its amended findings of fact, conclusions of law, and order for judgment, the court interpreted paragraph 11 of the dissolution judgment to provide the following:

a) The respondent's retirement benefits should be valued as of the date of the respondent's actual retirement.

b) The petitioner shall receive her interest in the respondent's retirement benefits on the date of the respondent's retirement, or in the case of pension benefits, on the date respondent receives payment.

c) The petitioner's interest extends to the respondent's pension benefit payments, employee savings plan and employee stock option plan.

d) The petitioner's interest in the retirement benefits is 20 percent of the retirement benefits accrued during marriage.

The court awarded respondent judgment in the amount of $10,615.61, plus interest from February 6, 1987, and ordered appellant to pay respondent a share of all future pension benefits according to the formula .7378 × benefits received × 20[%]. The court also ordered appellant to comply with reasonable requests for information and granted respondent leave to develop a qualified domestic relations order. The court denied respondent's motion to hold appellant in contempt; both parties' motions for fees; and appellant's motion to dismiss respondent's motion.

Thomas Mikoda appeals, and Elizabeth Mikoda filed notice of review.

## ISSUES

1. Did the trial court err by concluding respondent had an interest in appellant's employee savings plan (ESP) and his employee stock option plan (ESOP)?

2. Did the trial court err by concluding appellant's retirement benefits should be valued as of the date of retirement?

3. Did the trial court err by concluding the marital share of appellant's retirement benefits should be valued by application of a marital property ratio?

4. Did the trial court err by determining respondent was entitled to receive pension benefits as appellant received them, rather than waiting until appellant reaches age 65?

5. Did the trial court err by concluding respondent was not entitled to a percentage of appellant's early retirement bonus?

6. Did the trial court abuse its discretion by denying respondent's motion for attorney fees and costs?

7. Did the trial court err by denying respondent's motion to find appellant in contempt of court?

## ANALYSIS

■■■ The trial court found it did not have jurisdiction to modify the dissolution judgment under Minn.R.Civ.P. 60.02(6), but had jurisdiction to interpret the judgment. We agree. Interpretation of a divorce decree that is ambiguous or uncertain on its face and, because of its language, is of doubtful meaning or open to diverse constructions, may be clarified by the tribunal that ordered it. *Palmi v. Palmi*, 273 Minn. 97, 103, 140 N.W.2d 77, 81 (1966) (citing *Stieler v. Stieler*, 244 Minn. 312, 319, 70 N.W.2d 127, 131 (1955)).

■■■ The fact that the judgment was ordered by a predecessor does not limit action of a successor judge on the motion for clarification. *Stieler*, 244 Minn. at 319,

70 N.W.2d at 132. The trial court may receive and consider parol evidence to determine what was intended by the judgment and to express the judgment more definitely. *Palmi*, 273 Minn. at 103, 140 N.W.2d at 81. The whole record may be examined to ascertain the meaning of an ambiguous judgment. *Id.* On appeal, the trial court's construction of its own decree has great weight. *Id.* at 104, 140 N.W.2d at 82.

## I.

### Inclusion of ESP and ESOP

Appellant contends the trial court erred by holding his ESP and ESOP were pension or profit sharing plans in which respondent was awarded a share under the original decree.

■ The trial court concluded the dissolution court intended to comply with the statutory duty to divide all marital property, including retirement benefits, justly and equitably. Minn.Stat. § 518.58 (1976). The trial court therefore held the dissolution court intended that respondent's interest should extend to all benefits accrued by appellant during the marriage, regardless of the title of those benefits. In this the trial court is supported by the dissolution court's reference to "pension plans" and "profit sharing plans." We agree with the trial court's interpretation. *See Taylor v. Taylor*, 329 N.W.2d 795 (Minn.1983) (supreme court held vested pension benefits were marital property, and then used "pension benefits" and "retirement benefits" interchangeably).

The trial court held the ESP existed at the time of the dissolution, had been discussed during the dissolution proceedings, and therefore contained marital assets. This conclusion is supported by a document entitled "Bell Systems Savings Plan for Salaried Employees," a copy of which was attached to respondent's interrogatories in the dissolution matter.[3]

The trial court did not specifically find the record of the dissolution court contained evidence of the existence of the ESOP. The record contains a letter by appellant's counsel indicating four shares of stock may have been acquired prior to dissolution. There is also an affidavit of Bell's company benefits specialist, indicating what the 1977 values of the ESP and ESOP would have been. Although these documents are dated after the dissolution, they support a finding that a portion of the ESOP existed at the time of the dissolution, and that this marital portion is a retirement benefit covered by paragraph 11 of the judgment and decree.

Appellant points out that the amount he would save or invest under either of these plans was optional, and therefore should not be included in the profit sharing or pension benefits category under paragraph 11. However, to the extent appellant purchased stock under the ESOP or invested money in the ESP during the marriage, these plans include a marital portion of benefits. Conceivably, the dissolution court intended to award respondent an interest in these benefits.

## II.

### Pension Plan Valuation

Appellant contends the trial court erred by concluding the dissolution court intended the pension plan to be valued as of the date of retirement, rather than date of dissolution. The dissolution court found the pension plan existed, but made no finding as of its value.

Appellant contends the dissolution court's award of "20% of all the right, title and interest in the pension plans, profit sharing plans * * * which [appellant] *has* with his employer" clearly indicates an intent by that court to award 20% appellant's vested interest as it existed at the time of dissolution. He claims the trial court clearly did not intend to award respondent a share in the increase in his pension interest occurring after the dissolution. The trial

---

**3.** This document described a defined contribution plan Northwestern Bell adopted in July, 1969, according to which the employer would contribute to the plan an amount equal to 50% of the employee's basic allotment.

court concluded the dissolution court's use of the present tense indicated an intent respondent should receive 20% of the *benefits* accrued at the time of dissolution, and not of their value at that time. Any post-decree increase in the value of pension benefits existing at the time of dissolution would, under this interpretation, increase respondent's interest.

■ Here, appellant's interest in the pension benefits was vested at the time of dissolution, but would not mature until retirement. The record contains no valuation or proposed valuation of the pension benefit contemporaneous with the dissolution decree. The trial court found that had the dissolution court intended that respondent's interest be limited to a percentage of the value of respondent's benefits on the date of the decree, the dissolution court would have made a finding of that value. The trial court concluded that in order to establish the value of that benefit at the time of dissolution, it would have to vacate the judgment and reopen the matter to receive evidence.

The situation here is similar to that in *Faus v. Faus*, 319 N.W.2d 408 (Minn.1982). In *Faus*, the supreme court affirmed an award to wife of 50% of husband's retirement units existing at time of dissolution, although value of pension per unit increased with each of husbands subsequent pay increases. *See also Taylor*, 329 N.W.2d at 798 (although division of retirement benefits at time of dissolution is preferred, fixed percentage value should be used where present value determination is unacceptably speculative); *Kottke v. Kottke*, 353 N.W.2d 633 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Dec. 20, 1984) (because husband's benefits would vary depending on choice of retirement date, evidence did not reasonably support a correct calculation of of present value of benefits, and trial court correctly used fixed percentage method).

### III.

#### Marital Property Ratio

Based on its finding that the dissolution court made a disproportionate award of marital property and liabilities, the trial court concluded that the dissolution court intended to award respondent only 20% of the marital portion of the pension benefits, and that this marital portion should be calculated according to the formula set out in *Janssen v. Janssen*, 331 N.W.2d 752, 756 (Minn.1983). In *Janssen*, the supreme court quoted with approval the formula used in an Illinois case:

marital interest = *years of marriage when benefits accumulated* total years benefits accumulated before paid

■ This formula, applied for the first time in Minnesota in *Janssen*, was not the law at the time of dissolution. There is no basis for the trial court's finding here, that the dissolution court contemplated application of a marital property ratio never before articulated in Minnesota. We therefore hold the trial court erred by applying the marital property ratio to reduce respondent's 20% share.

### IV.

#### Time of Distribution

Appellant contends the trial court erred by awarding respondent retirement benefits as of the date of his retirement.

■ A letter in the trial court file, dated May 6, 1977, indicates the possibility of appellant's early retirement existed in 1977, the year of dissolution. The dissolution court set no explicit time for respondent's payment, and did not address retirement age. The trial court interpreted the judgment and decree to hold respondent was entitled to receive payment upon appellant's retirement. We agree with the trial court's interpretation. *See Taylor*, 329 N.W.2d at 798–99 (court discussed whether retirement benefits should be awarded at time of dissolution or upon receipt by former spouse, but made no reference to potential later payment).

### V.

#### Early Retirement Bonus

Respondent contends the trial court erred by refusing to interpret the dissolu-

tion court's judgment as awarding her 20% of appellant's early retirement bonus. The trial court found that at the time of the dissolution, respondent had no vested interest in an early retirement bonus. There is no indication such a program existed with Bell at the time of the dissolution.

Respondent contends the early retirement bonus is a retirement benefit received by appellant, and that she is therefore entitled to a portion of that amount. However, the trial court awarded respondent 20% of any interest appellant *has* in a retirement account, and not in any interests he may in the future acquire. Since there is no indication that at the time of the dissolution, such a benefit even existed, the trial court did not err by concluding this was not a benefit of which the dissolution court intended to award appellant 20%.

## VI.

### Attorney Fees and Costs

Respondent contends the trial court erred as a matter of law by refusing to award her attorney fees and costs under Minn.Stat. § 518.14 (1986). The statute states the court may, "from time to time, after considering the financial resources of both parties, * * * require one party to pay * * * attorney's fees * * * and costs * *." *Id.* The amount to be allowed as attorney fees rests almost entirely within the discretion of the trial court. *Rutten v. Rutten,* 347 N.W.2d 47, 51 (Minn.1984).

Here the trial court found "each party appears to have roughly equal financial resources." The court also found both parties had legitimate positions in a genuine dispute.

Respondent contends appellant tried to conceal from her the time and extent of his pension benefits, and therefore caused her to incur substantial costs in aggressive discovery to determine and enforce her rights. However, the trial court found appellant could well have felt he was in his right in failing to inform respondent of his retirement. We hold the trial court did not abuse its discretion by refusing to award respondent attorney fees.

## VII

### Contempt

Respondent argues the trial court erred by denying her motion to find appellant in contempt for failing to inform respondent of his early retirement. She contends that upon his retirement, appellant made no effort to pay her anything.

In exercising civil contempt powers in divorce cases, the only objective is to secure compliance with an order presumed to be reasonable. *Punishment for past misconduct is not involved; that is a field reserved to criminal proceedings of which criminal contempt is one example.*

*Hopp v. Hopp,* 279 Minn. 170, 173, 156 N.W.2d 212, 216 (1968) (emphasis in original).

The recognized limits on the trial court's exercise of civil contempt powers requires that the decree allegedly violated "clearly defined the acts to be performed by a party to the proceedings." *Id.* at 174, 156 N.W.2d at 216. Here, the trial court found the claim of clarity of appellant's obligation under the decree was inherently inconsistent with respondent's motion for clarification and interpretation of the judgment with respect to the paragraph giving rise to appellant's obligation.

The trial court correctly concluded the judgment and decree did not clearly define appellant's duties to warrant a finding of contempt. There is no indication that once appellant's duties are clearly defined, a contempt order will be needed to compel appellant's compliance.

## DECISION

Trial court did not err by finding respondent has interest in appellant's profit sharing and pension plans. The trial court did not err by finding appellant's retirement benefits should be valued as of date of retirement. The trial court erred by applying marital property ratio to reduce respondent's share of appellant's retirement benefits. The trial court did not err by finding

distribution of respondent's share of retirement benefits was to commence at time of appellant's retirement. Trial court did not err by finding respondent was not entitled to portion of appellant's early retirement bonus. Trial court did not abuse its discretion by denying respondent's request for attorney fees. Trial court did not err by refusing to find appellant in contempt of court.

Affirmed in part and reversed in part.